```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re
                                            Chapter 11
    PORTO RESOURCES, INC.,
                                            Case No. 13-10875 (reg)

                   Debtor.
-------------------------------------------------------X
```

## DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

Dated: Coram, New York
       January 21, 2020

       Michael L. Previto,
       *Attorney for Debtor*
       150 Motor Parkway, Suite 401
       Hauppauge, New York 11788
       Tel: (631) 379-0837

Porto Resources, L.L.C. (the "Debtor") hereby proposes the following plan of reorganization (the "Plan") pursuant to title 11 of the United States Code.

## OVERVIEW OF PLAN

The Debtor owns three properties located at 560 W 173rd Street, New York, New York (a Four Family Townhouse), 517 W 158th Street, New York, New York (A Townhouse Shell), and a vacant land property in Greenville Orange County, New York (the "Property"). These properties are the Debtor's sole significant assets. The Debtor has entered into a Contract of Sale to sell the Property commonly known as 517 W 158th Street, New York, New York. This Plan contemplates and provides for this sale pursuant to a Contract of Sale approved by the Court prior to the Confirmation Hearing and Confirmation Order. The purchase price in the Contract of Sale will be a minimum of $1,255,000.00. The Sale Proceeds will be distributed in accordance with the terms of this Plan. The Sale Proceeds should not exceed the total amount of all claims against the Debtor however provision is made herein for any minor shortfall.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to case filed on the Petition Date.

1.1. "Administrative Expense" or "Administrative Claim" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b) of the Bankruptcy Code.

1.2. "Allowed" when used with "Claim" or "Administrative Expense" means a Claim or Administrative Expense against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim or Proof of Administrative Expense Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.3. "Allowed Interest" means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.4. "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

1.5. "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York.

1.6. "Bankruptcy Fees" mean all fees and charges assessed against the estate under section 1930 of title 28 of the United States Code.

1.7. "Bankruptcy Rules" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

1.8. "Bar Date" means the date fixed by Order of the Bankruptcy Court by which a Proof of Claim or Proof of Interest must have been filed.

1.9. "Brokerage Agreement " means the Debtor's agreement to pay Keller Williams NYC a success fee upon the Closing of the Contract of Sale and payment of the price specified therein.

1.10. "Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.11. "Case" means this case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and entitled Porto Resources, LLC.

1.12. "Cash" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.13. "Claim" means claim as defined in 11 U.S.C. § 101(5).

1.14. "Class" means a category of substantially similar Claims or Interests as established pursuant to Article 3 of the Plan.

1.15. "Closing" means the closing of the Contract of Sale of the Property at which point title to the Property will be transferred in accordance with the Confirmation Order and a deed effectuating such transfer has been executed, delivered and recorded in the Register's Office.

1.16. "Confirmation" or "Confirmation Date" means the date on which the Confirmation Order is entered.

1.17. "Confirmation Hearing Date" means the date the Court holds the Confirmation Hearing

1.18. "Confirmation Order" means an Order confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the sale of the Property pursuant to the Contract of Sale.

1.19. "Contract of Sale" means the contract dated January 14, 2020 between the Debtor and Harlem Heights Holdings, LLC pursuant to which the Debtor contracted to sell the Property.

1.20. "Creditor" means a holder of an Allowed Claim.

1.21. "Debtor" means Porto Resources, LLC.

1.22. "Deed" means the deed as defined in Article 7 of the Plan.

1.23. OMITTED

1.24. "Disbursing Agent" means Debtor's Chapter 11 counsel.

1.25. "Disputed Claim" means

    (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated or with respect to which no Proof of Claim has been filed;

    (b) any Claim (including an Administrative Expense), or portion thereof, that has not been disallowed and with respect to which an objection to the

5

allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

(c) Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

1.26. "Effective Date" means the date of the Closing.

1.27. "Equity Interests" means any and all equity interests in and to the Debtor.

1.28. "Equity Interest Holder" means the holder of an Allowed equity interest in the Debtor.

1.29. "Estate" means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.30. "Executory Contract" means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.31. "Final Order" means an order which is: (i) not subject to a pending appeal; (ii) no longer appealable, or if appealed, affirmed on appeal with no further appeals possible or, (iii) in the case of the Confirmation Order, which has not been stayed.

1.32. "Legal Holiday" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.33. "Lien" means a charge, hold, claim, or encumbrance upon the Property.

1.34. "Mortgage" means that certain Mortgage and Security Agreement dated February 14, 2006 between BDP Bank or its successor Sunkyung. and the Debtor, which has been assigned by BPD and is currently held by Sunkyung.

1.35. "Order" means an order of the Bankruptcy Court.

1.36. "Petition Date" means March 26, 2014, the date on which this Case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code by the Debtor.

1.37. "Plan" means this Plan of Reorganization, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.38. "Priority Tax Claim" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.39. "Professional" means all professionals employed by the Debtor or a Committee under section 327 of the Bankruptcy Code.

1.40. "Professionals' Fees" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals, as awarded by Final Order fo l lowing application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.41. "Proof of Claim" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and applicable Bankruptcy Rules.

1.42. "Proof of Interest" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and applicable Bankruptcy Rules.

1.43. "Property" means the property owned by the Debtor known as 517 W 158th Street, New York, New York, unless this plan specifically refers to either of the Debtor's other two properties.

1.44. "Purchaser" means Harlem Heights Holdings, LLC.

1.45. "Register's Office" means the Office of the New York City Register, New York County.

1.46. "Rejection Claim" means a claim filed by a party to an Executory Contract which seeks damages on account of the rejection of the contract.

1.47. "Sale Proceeds" means the proceeds of the Contract of Sale for the property known as 517 W 158th Street, New York, New York.

1.48. "Schedules" mean the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521 (1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.49. "Secured Claim" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the

value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.50. "Secured Lender" refers to Sunkyung, LLC.

1.51. "Transfer Taxes" means any and all stamp taxes or similar taxes by the State or City of New York with respect to the transfer of the Debtor's real property at 517 W. 158th Street, New York, New York.

1.52. "Unsecured Claim" means an Allowed Claim, including any Deficiency Claim, that is not an Administrative Claim, a Bankruptcy Fee, a Priority Tax Claim, or a Secured Claim that has been modified to an unsecured claim.

1.53. "Unexpired Lease" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2
## TREATMENT OF UNCLASSIFIED CLAIM

Pursuant to section 1123(a)(l) of the Bankruptcy Code, the Plan does not classify Administrative Claims which consist of Professional's Fees and Bankruptcy Fees.

2.1. <u>Professionals' Compensation and Reimbursement</u>. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than 30 days following the Effective Date. All applications remain subject to Bankruptcy Court approval and shall be paid out of the Sale Proceeds or pursuant to this Plan if said sale is not be itself sufficient. The Debtor estimates Professional Fees of $25,000.00 exclusive of Broker success fees in the sale of the property.

2.2. <u>Priority Tax Claims</u>. All outstanding real estate taxes and liens shall be paid from the Sale Proceeds at Closing. The Debtor estimates tax claims as having been satisfied through the Receiver, Robert Brill, during the pendency of this action.

2.3. <u>Bankruptcy Fees</u>. All fees and charges incurred by the Debtor under section 1930 of title 28 of the United States Code through the Effective Date shall be paid from the Sale Proceeds. The Debtor estimates Bankruptcy Fees of less than $6,500.

ARTICLE 3

CLASSIFICATION OF CLAIMS AND INTERESTS

Except as may otherwise be provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3. A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1. Unimpaired Class 1-Allowed Secured Claim. Class 1 consists of the Secured Claim held by Sunkyung, which is secured by a Lien against the Properties located at 517 W 158th Street, New York, New York and the City of New York, Department of Housing Preservation and Development, with respect to approximately $21,000.00 Environmental Control Board liens.

3.2. Unimpaired Class 2 - Unsecured Claims. Class 2 consists of all Unsecured Claims. There is one disputed property filed unsecured claim, held by Robert Gummernick.

3.3. Unimpaired Class 3 - Equity Interests. Class 3 consists of all Equity Interests. Presently, Joseph Porto is the lone equity interest holder.

ARTICLE 4

TREATMENT OF CLAIMS AND INTERESTS

Allowed Claims in Classes I and 2 and Allowed Interests in Class 3 are not impaired and shall receive the following treatment under the Plan in full satisfaction, release and discharge thereof.

4.1. Class 1- Allowed Secured Claim. The Secured Creditor, Sunkyung, shall receive payment from the Sale Proceeds in exchange for its Mortgage and claim to the Purchaser or its designee. The amount of the payment shall be as fixed by the Bankruptcy Court or as consented to by the Debtor and the Secured Lender. The Debtor estimates such claim as less than $115,000.00, upon proper liquidation by the sale, which should be paid in full.

4.2. An additional secured claim of approximately $21,000.00 is held by the City of New York for Environmental Control Board.

4.3. It is believed that $14,000.00 exists on the property to be sold, subject to review of the Purchaser's Title Report.